UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:08CV390-J

JERRY HOURIGAN                                                                                       PLAINTIFF

VS.

MICHAEL J. ASTRUE,
    Commissioner of Social Security                                              DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Jerry Hourigan ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be vacated and this matter remanded for further proceedings.

## PROCEDURAL HISTORY

On May 17, 2004, Claimant filed application for disability insurance benefits and supplemental security income payments, alleging that she became disabled as of September 28, 2003. After a hearing, Administrative Law Judge Timothy G. Keller ("ALJ") determined that claimant's human immunodeficiency virus (HIV), diabetes mellitus, visual deficit and "nerves," were medically determinably impairments, but that they did not significantly limit the ability to perform basic work-related activities. This became the final decision of the Defendant when the Appeals Council denied review on May 30, 2008.

## STANDARD OF REVIEW

The disability determination process consists of five steps. Wyatt v. Secretary, 974 F.2d 680

(6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

1. The claimant must not be engaged in substantial gainful activity.

2. The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking. 20 CFR Section 416.921.

3. If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

4. The claimant must be unable to do his or her past relevant work.

5. If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs. Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988).

ARGUMENTS ON THIS APPEAL

Mr. Hourigan's HIV positive status was identified in 1997. He began taking medications

2

and his "numbers" improved, but he suffered from the side effects of the medication. He states that in 2003, his employer of three decades told him he was being let go because of poor performance. For a period of time, he was off his medications because of the severe side effects, but by the time of the hearing, he was once again taking Sustiva and Combivir.

Plaintiff argues that the ALJ erred in failing to find his HIV constituted a "severe" impairment. This is not a case in which a particular impairment was found "not severe," but other impairments took the analysis to Steps 3 or 4. Rather, because the ALJ found no impairment or combination of impairments "severe," the sequential evaluation terminated at Step 2. Thus, the issue presented here is whether substantial evidence supports the determination that Mr. Hourigan's HIV did not significantly limit his ability to engage in basic work-related activities.

The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d). The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out "totally groundless claims." Farris v. Sec'y of HHS, 773 F.2d 85, 89 (6th Cir.1985). The Sixth Circuit has construed the step two severity regulation as a " de minimis hurdle" in the disability determination process. Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir.1988). If an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe." SSR 96-3p (July 2, 1996).

In support of his claim, Mr. Hourigan points to evidence that his impairment, together with the side effects of the medication to treat it, causes fatigue and a lack of stamina that requires frequent rest periods. The ALJ does not directly address the questions of fatigue or stamina, but

notes that claimant received his diagnosis and began taking the medications six years prior to his ceasing full-time employment. Tr. 23.

In questioning Mr. Hourigan's credibility regarding his stamina, the ALJ notes daily activities (carrying horse feed and supplies, barn cleaning, etc.) that causes him to "question the complete inability to do any kind of work." Tr. 23. However, the hearing testimony on which this is based hardly suggests day-long sustained effort:

> Q    Does your care for the horses include feeding them?
>
> A    Yeah. Of course there's only feeding in the wintertime. I, I don't feed them in the summertime.
>
> Q    Do you exercise them?
>
> A    No, not really.
>
> Q    Clean the stalls?
>
> A    Yes, I have. I don't keep my animals in the stall.
>
> Q    Where do you, do you have a horse barn there?
>
> A    Yes. They're, if they're in the stall it's just for a short period of time. All my, all my horses run loose.

Tr. 390. Mr. Hourigan subsequently eliminated any ambiguity in his testimony, clarifying that he does not work with the horses, or even check on them, every day; that even when he is dealing with the horses, he spends no more than a couple of hours a day, and that is not continuous time; that his wife, son and daughter do much of the work he used to do; that he lifts a salt block three or four times a year; that he lifts a bag of feed once or twice a month during the wintertime; and that he does no farm or other work on a daily basis. Tr. 392-394. Thus, there is no substantial evidence to support the ALJ's statement that Mr. Hourigan's daily activities are at odds with his claim of fatigue

4

and lack of stamina.

The Court is even more disturbed regarding the ALJ's other two reasons for doubting Mr. Hourigan's credibility:

> The Administrative Law Judge notes that his human immunodeficiency virus is apparently the result of his lifestyle of years ago and he had the condition dating back at least to 1998 when his count was 212 but it did not prevent him from working.

Tr. 23. As to the first of these reasons (i.e., claimant's "lifestyle of years ago"), the Court is puzzled about the inclusion of the oddly speculative term "apparently" in the opinion of a jurist who is charged with considering and reciting specific evidence to support his factual determinations. Even more seriously, the Court is unaware of any authority whatsoever that suggests that the method of originally contracting any disease can "reflect[s] negatively on [a] claimant's credibility." Including any such consideration would cast a cloud over the entire credibility determination.

As to the second stated reason (i.e., his continuing to work when his count was 212), the ALJ disregarded plaintiff's testimony that he was not actually able to do his job while suffering with HIV, even though his employer kept him on for a time. Although the plaintiff clearly recounted the process of his employment's finally being terminated (after 31 years) because of his poor performance, and although the plaintiff unambiguously testified that the job was not eliminated (Tr. 384), the ALJ seems to have persisted in believing that Mr. Hourigan's position was eliminated. Substantial evidence fails to support such an interpretation.

The ALJ stated that he relied "primarily on the opinion of the Kentucky Disability Determination Services' physician ... finding all problems less than severe." Tr. 23. Dr. Santucci examined Mr. Hourigan on a single occasion, and reported normal range of motion, normal

neurological evaluation, no evidence of muscle atrophy, and normal gait. Tr. 340. While Dr. Santucci recorded Mr. Hourigan's complaints that his medications "end up" causing blurred vision and dizziness, and that he has generalized fatigue and "feels tired all the time," the physician does not state or intimate that his one time examination would be capable of confirming or disproving such complaints. Tr. 338. Records of Mr. Hourigan's treating physician, Dr. Raff, confirm claimant's persistent complaints over the years of significant fatigue, nightmares, frequent colds, flu and infections, and even hospitalization for "AIDS defining" pneumonia. Tr. 192-193, 199, 206, 208-210, 212-214. The ALJ did not mention Dr. Raff's records at all.

Thus, a number of factors combine to add up to legal error: The ALJ disregarded evidence without explanation, rejected witness credibility without stating supportable reasons, and focused on ability to perform individual occasional tasks while ignoring the salient issue of ability to maintain effort on a sustained basis. When these shortcomings are viewed in light of the authority requiring that the "severity" determination be treated as a "de minimus" hurdle, the Court is forced to the conclusion that substantial evidence fails to support the ALJ's finding that Mr. Hourigan's HIV imposes no more than a minimal limitation in his ability to do basic work activities.

An order in conformity has this day entered.